## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **DEWAYNE HELMANDOLLAR,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   **CIVIL ACTION NO. 1:07-00376** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 13 and 14.), and Plaintiff's Reply. (Document No. 15.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 3 and 6.)

The Plaintiff, Dewayne Helmandollar (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on July 31, 2003 (protective filing date), alleging disability as of September 30, 2002, due to lower back pain, right hip pain, and pain down his right leg. (Tr. at 15, 53-55, 64.) The claim was denied initially and upon reconsideration. (Tr. at 27-29, 35-36.) On December 12, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 40.) The hearing was held on April 18, 2005, before the Honorable Robert S. Habermann. (Tr. at 326-52.) By decision dated July 26, 2005, the ALJ found that Claimant was not entitled to benefits. (Tr. at 15-24.) The ALJ's decision became the final decision of the Commissioner on April 6, 2007,

when the Appeals Council denied Claimant's request for review. (Tr. at 6-10.) On June 8, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 23, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from lumbosacral spine strain, which was a severe impairment. (Tr. at 23, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for work at the light level of exertion as follows:

> Specifically, the claimant can lift or carry 10 pounds frequently, 20 pounds occasionally; sit, stand, or walk about 6 hours in an 8 hour day, perform occasional bending, stooping, crouching, crawling, kneeling, and climbing. The claimant is restricted to work that only requires reading at the sixth grade level, with no other mental restrictions..

(Tr. at 23, Finding No. 6.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 23, Finding No. 7.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a night watchman and courier messenger, at the light level of exertion. (Tr. at 24, Finding No. 11.) On this basis, benefits were denied. (Tr. at 24, Finding No. 12.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

3

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 20, 1963, and was 41 years old at the time of the administrative hearing, April 18, 2005. (Tr. at 22, 53, 329.) Claimant had a high school education, and attended an auto diesel technical school. (Tr. at 22, 70, 329.) In the past, he worked as a truck driver and light mechanical worker. (Tr. at 22, 65, 81-87, 334-36, 347.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant fist alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding that Claimant's allegations regarding his symptoms and limitations were not credible in their entirety. (Document No. 13 at 8-10.) Claimant notes that he was

diagnosed with lumbosacral spine sprain after incurring a work injury on September 30, 2002. (Id. at 8.) Following the injury, Claimant reported increased pain, loss of spinal movement, depression, and anxiety. (Id.) He notes that he consistently reported pain levels of five or six out of ten, and that EMG studies revealed chronic denervation. (Id. at 9.) Claimant further notes that Robert Williams, a vocational expert, opined that he was unable to return to his previous job as a truck driver and that his borderline intelligence, low aptitude for acquiring new skills, and his mental impairments restricted him from engaging in any type of regular activity. (Id.) Finally, Claimant notes that the ALJ must consider his activities of daily living in assessing his pain and credibility, and asserts that the ALJ erred in relying on his minimal activities to find that he did not suffer disabling pain. (Id. at 10.)

The Commissioner asserts that Claimant's "mere diagnoses and allegations of disabling limitations cannot, and did not, show a disability as defined by the Act." (Document No. 14 at 12.) The Commissioner asserts that the ALJ specifically considered Claimant's reports of pain and specific diagnoses of lumbar strain and borderline intelligence but determined for specific reasons that he was not under a disability. (Id. at 13.) The ALJ cited specific examples of medical evidence that contradicted Claimant's allegations of disabling pain and limitations, and explained why the evidence did not support Mr. Williams's conclusory vocational statement that Claimant was unable to work. (Id. at 13-14.) Finally, the Commissioner asserts that the ALJ considered the objective findings of Drs. Kropac and Merva. (Id. at 16.) Accordingly, the Commissioner asserts that the ALJ considered Claimant's complaints and that the ALJ's decision is supported by substantial evidence. (Id. at 17.)

Second, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in not posing a proper and complete hypothetical question to the vocational expert ("VE") that included all of Claimant's impairments. (Document No. 13 at 10-11.)

5

Specifically, Claimant contends that the ALJ failed to ask the VE how Claimant's major depressive disorder with anxiety disorder affected his functional capacity to work. (Id. at 11.)

The Commissioner asserts that the ALJ thoroughly discussed in his decision that with the exception of a limited reading ability, Claimant no had no mental restrictions. (Document No. 14 at 17.) The ALJ therefore, properly did not include any further limitations regarding mental restrictions in his hypothetical questions presented to the VE. (Id. at 18.)

Finally, in his Reply, Claimant contends that the evidence submitted post-hearing to the Appeals Council, primarily the progress notes, MRI results, and deposition of Dr. Richard Bonfiglio, should have resulted in remand. (Document No. 15 at 6-7.)

1. Pain and Credibility.

Claimant alleges that the ALJ erred in finding that Claimant's allegations regarding his symptoms and limitations were not credible in their entirety. (Document No. 13 at 8-10.) The Commissioner asserts that Claimant's argument is without merit and that the ALJ's decision is supported by substantial evidence. (Document No. 14 at 12-17.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective

medical evidence." <u>Mickles v. Shalala</u>, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. <u>Hyatt v. Sullivan</u>, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2006). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (I) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2006).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that

7

> could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the

individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

      The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms and credibility. (Tr. at 21-22.) The ALJ found, at the first step of the analysis, that Claimant's "medically determinable impairments could reasonably be expected to produced the alleged symptoms." (Tr. at 21.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 21-22.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. at 21.)

      The ALJ summarized Claimant's testimony in his decision, noting that Claimant stated that he experienced low back pain which radiated into his right leg, and suffered anxiety and nervousness in crowds. (Tr. at 21, 337-41, 343.) The ALJ thus noted the nature and location of Claimant's pain, and further noted that Claimant had difficulty with reading and spelling. (Tr. at 21, 330.) Regarding treatment, the ALJ noted that Claimant was treated conservatively with prescription medications, including Felden, Skelaxin, Elavil, and Lortab, that he used a cane and a transcutaneous nerve

stimulation ("TENS") unit, and underwent a physical therapy/work conditioning program. (Tr. at 18, 21, 341.) The ALJ further noted Claimant's testimony that he reclined one to two hours in an eight-hour day. (Tr. at 21, 340.)

The ALJ also summarized Claimant's testimony regarding his activities of daily living. (Tr. at 21, 330-32.) Claimant testified that he sat on his porch, walked in the yard, went to church, that his wife did the housework and shopping, and that his wife helped him put on his shoes. (Tr. at 21, 331-32.) Claimant further testified that he alternated cooking with his wife, turned the dogs loose outside, went to the garage and listened to the radio, took naps when his back hurt, and went fishing once a week, using the handicapped dock. (Tr. at 332.) On a form Activities of Daily Living, dated August 28, 2003, Claimant reported that he did not require any special help in caring for his personal needs and grooming, that he performed lawn care with the assistance of his son, that his wife prepared his meals, and that he used to shop with his family but that he no longer could because he was unable to walk long periods of time. (Tr. at 93-95.) He reported that he read magazines and books and listened to the radio and other music for two hours each per day, that he read newspapers for one hour per day, and that he watched television for six hours per day. (Tr. at 95.) Claimant indicated that he visited relatives for short periods of time and that he received visits from friends. (Tr. at 96.) He reported that he left his house to attend medical appointments. (Id.)

The ALJ also summarized the medical evidence of record. (Tr. at 17-22.) The ALJ noted that Claimant treated with Dr. Robert Kropac, M.D., following a work injury/fall on September 30, 2002. (Tr. at 17-18, 206-32, 241-50, 251-56.) A lumbar MRI scan on November 11, 2002, revealed mild focal degenerative disc disease at L4-5 with left postereolateral disc bulging and high termination of the thecal sac. (Tr. at 18, 123.) A repeat MRI on December 1, 2003, revealed degenerative changes

at L4-5, but no evidence of any disc herniation. (Tr. at 246.) It was noted that Claimant's lumbar MRI was normal. (Id.) Dr. Kropac's treatment notes from December 3, 2002, through August 17, 2004, consistently revealed Claimant's reports of constant low back pain, which was increased on bending, stooping, and prolonged sitting and standing, as well as right lower extremity pain with prolonged sitting and standing. (Tr. at 17-18, 206-32, 241-50, 251-56.) Physical exams revealed tenderness to palpation over the lumbosacral spine and related paraspinal muscle masses with tenderness that extended into the right buttock. (Id.) Claimant exhibited limited range of lumbosacral spine motion and positive right straight leg raising with lower back pain on the right side at ninety degrees. (Id.) Claimant's sensation was intact throughout both lower extremities and he was able to heel and toe walk without evidence of weakness, but his gait was antalgic in nature with a shortened stance phase on weight bearing to the right lower extremity. (Id.) Dr. Kropac consistently diagnosed lumbosacral musculoligamentous strain. (Id.) Dr. Kropac initially opined that Claimant was temporarily totally disabled and directed that he undergo physical therapy and continue prescribed medications. (Tr. at 17-18, 212-32.)

On March 18, 2003, Claimant underwent a Functional Capacities Evaluation at Bluefield Regional Medical Center, which revealed that Claimant was capable of performing limited light to limited heavy work. (Tr. at 18, 142-48.) It was recommended that he undertake a six week work conditioning program. (Tr. at 18, 142.) After completing the work conditioning program, Claimant underwent an exit Functional Capacities Evaluation on July 16, 2003, which revealed that Claimant was capable of performing light work. (Tr. at 18, 125-31.) During the evaluation, it was noted that Claimant adjusted his right leg and posture, took sitting and resting breaks, requested to stop the activity on which he was performing, winced, sighed, moved at a decreased velocity, and appeared

to cry during the evaluation. (Tr. at 18, 129.) However, the evaluator further noted that Claimant carried on a conversation with the evaluator without observable difficulty, completed the entire evaluation, and left the facility unassisted. (Id.) No further rehabilitation recommendations were made in the report of the evaluation. (Tr. at 18, 125.)

The ALJ noted that Dr. Kropac continued to examine Claimant at six week intervals for the Workers' Compensation Division, and ordered nerve conduction studies, which revealed chronic denervation of the left anterior tibialis and right median gastrocnemius muscles on the right and left side. (Tr. at 18, 204-05, 206-10, 241-50, 251-56.)

On August 28, 2003, state agency medical consultant, Dr. Reddy, opined that Claimant was capable of performing work at the light exertional level with occasional postural limitations, and an avoidance of concentrated exposure to vibration, and a moderate exposure to hazards. (Tr. at 18, 196-203.) On November 19, 2003, Marcel G. Lambrechts, M.D., another state agency medical consultant, also opined that Claimant was capable of performing light exertional level work with occasional postural limitations and an avoidance of concentrated exposure to extreme cold and hazards and an even moderate exposure to vibration. (Tr. at 18, 233-40.)

On May 24, 2005, Dr. Kropac completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) and a form Clinical Assessment of Pain. (Tr. at 20, 276-79.) Dr. Kropac opined that Claimant was capable of lifting twenty pounds occasionally and less than ten pounds frequently, standing or walking less than two hours in an eight-hour workday, walking less than six hours in an eight-hour workday, and performing occasional postural activities. (Tr. at 20, 276-77.) He further opined that Claimant occasionally was limited in reaching, handling, fingering, and feeling. (Tr. at 20, 278.) Dr. Kropac opined that Claimant's pain was present to such an extent that

it would be distracting to performing adequately daily activities or work, and that physical activity greatly increased his pain. (Tr. at 20, 279.) He also opined that his medication impacted his ability to the extent that some limitations were present but would create serious work problems. (Id.) The ALJ accorded Dr. Kropac's opinions little weight because they were inconsistent with his prior statements that Claimant could perform a limited range of light to medium exertional sustained activities. (Tr. at 20.)

The medical record also contains the vocational evaluation of Claimant by Robert L. Williams, M.A., Licensed Professional Counselor, who performed the evaluation at Claimant's counsel's request on March 31, 2005. (Tr. at 20, 264-69.) Mr. Williams noted that Claimant walked with a limp, carried a cane, and stood several times during the evaluation due to back pain. (Tr. at 20, 264.) He noted that Claimant's exit functional capacities evaluation demonstrated that he could perform limited light to limited heavy work, but was unclear as to actual limitations. (Tr. at 20, 266.) Mr. Williams opined that Claimant became permanently disabled on September 30, 2002, and was incapable of sustained work activity. (Tr. at 20, 267.) The ALJ accorded little weight to Mr. Williams's opinions because they were inconsistent with the medical evidence from Claimant's treating physicians since the alleged onset date. (Tr. at 20.)

Regarding Claimant's mental capacities, the medical evidence reveals that Claimant initially sought treatment from Dr. George Ide, M.D., at Southern Highlands Community Mental Health Center on November 12, 2004. (Tr. at 19, 259-60.) Dr. Ide noted that Clamant's mood was "a little better," and her affect was constricted mildly. (Tr. at 19, 259.) Claimant interacted well, was cooperative, exhibited appropriate and goal directed speech, good appetite, fair energy, logical and goal directed stream of thought, appropriate content of thought, fair and intact insight and judgment,

and fair memory. (Tr. at 19, 259-60.) Dr. Ide noted that Claimant's condition had improved with medication, which included Resteril and Zoloft. (Tr. at 19, 260.) On January 7, 2005, Dr. Ide diagnosed major depressive disorder, single episode; anxiety disorder NOS; and a GAF of 54.[1] (Tr. at 19, 257.) On exam, he noted that Claimant's mood was "pretty good," though his affect was sad, but his sleep was adequate and "better." (Id.) All other factors remained the same or had improved since November, 2004. (Tr. at 19, 257-58.) Dr. Ide again noted that his condition had improved with medication, and he prescribed Paxil. (Tr. at 19, 258.) Finally, on March 4, 2005, Claimant was assessed with normal stream of thought, appropriate content of thought, fair memory, and intact insight and judgment. (Tr. at 19-20, 262-63.) Dr. Ide prescribed Neurontin, Ambien, and Paxil. (Tr. at 19-20, 263.)

On April 11, 2005, Dr. Ide completed a Mental Residual Functional Capacity Assessment, which resulted in marked limitations in maintaining attention, concentration, persistence, pace, and social interactions. (Tr. at 20, 270-72, 274.) Dr. Ide noted Claimant's diagnoses and symptoms and opined that the symptoms precluded him from "seeking or maintaining gainful employment." (Tr. at 20, 274.) The ALJ gave little weight to Dr. Ide's opinions because they were not supported by any clinic or counseling notes and were inconsistent with the medical evidence of record. (Tr. at 20.) The medical record contained brief treatment notes, which according to the ALJ, did not describe the symptoms identified by Dr. Ide in his assessment. (Tr. at 21.)

---

[1] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

14

Based on the foregoing, it is clear that the ALJ properly considered the factors under 20 C.F.R. § 404.1529(c)(4) and 416.929(c)(4), in finding Claimant not entirely credible. The ALJ determined that the record contained no intensive treatment for Claimant's pain, that there was no record of a treating physician who prescribed the use of a cane, and there were no counseling records that demonstrated mental impairments that resulted in functional limitations. (Tr. at 21.) Though Claimant reported restricted daily activities, the ALJ noted that it appeared to be a matter of choice as opposed to having been caused by his impairment. (Id.) Having discounted Dr. Ide's opinions, the ALJ found that there was no evidence of record demonstrating that Claimant suffered marked limitations in maintaining concentration, persistence, pace, or social functioning. (Id.) It is clear therefore, that the ALJ explained his pain and credibility assessment and considered all the medical evidence of record. Accordingly, the Court finds that the ALJ properly considered Claimant's subjective allegations and that his pain and credibility assessment is supported by substantial evidence.

2. Hypothetical Questions.

Claimant next alleges that the ALJ erred in presenting hypothetical questions to the VE when he failed to ask whether Claimant's major depressive disorder and anxiety disorder affected his functional capacity. (Document No. 13 at 10-11.) The Commissioner asserts that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision. (Document No. 14 at 17-19.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult

to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In the ALJ's hypothetical questions to the VE, he included all of Claimant's impairments that were supported by the record. (Tr. at 348-50.) The ALJ first asked whether a person of Claimant's age, education, and past relevant work experience, who was limited to reading and writing above a sixth grade level but below a twelfth grade level, with the physical limitations set forth in Exhibit 4F, could perform any work. (Tr. at 348.) In response to the ALJ's hypothetical, the VE responded that such person could perform light jobs such as a night watchman, courier/messenger, or hand packer. (Tr. at 349.) The ALJ then asked whether any of the jobs identified would be altered with the inclusion of the limitations stated in Exhibit 3F. (Id.) The VE responded that such limitations would permit the performance of the night watchman and courier jobs. (Id.) The ALJ further asked whether any of the jobs identified would be altered with the inclusion of the mental RFC at Exhibit 14F and the physical limitations contained in Exhibit 3F. (Tr. at 350.) The VE responded that such limitations would preclude all work. (Id.) Finally, the ALJ asked whether the inclusion of having to recline two hours a day during the workday would alter the jobs identified. (Tr. at 350.) The VE responded that such limitations would preclude all work. (Id.)

Based on the foregoing, and contrary to Claimant's allegations, the ALJ presented a

hypothetical question to the VE that contained the mental limitations assessed by Dr. Ide at Exhibit 14F. However, the ALJ previously determined that Dr. Ide's assessment was entitled little weight and found that the evidence failed to demonstrate any mental functional limitations. With the exception of Claimant's reading limitation, the ALJ properly found that the record contained no other mental restrictions, and did not incorporate any such limitations into his RFC finding. Accordingly, the Court finds that the ALJ's hypothetical questions to the VE were proper and in accordance with the applicable law and Regulations. The ALJ's decision is supported by substantial evidence.

3. Evidence Submitted to Appeals Council.

Finally, Claimant alleges that the evidence he submitted post-hearing to the Appeals Council requires remand. (Document No. 15 at 6-7.) Claimant submitted to the Appeals Council letters from Claimant's counsel, purporting to offer the deposition of Dr. Richard Bonfiglio, dated July 6, 2006; treatment notes from Dr. Bonfiglio dated March 3, March 30, May 3, and June 8, 2006; the deposition of Mr. Robert Williams, M.A., dated March 29, 2006; and a report from Community Radiology dated April 27, 2006. (Tr. at 280-325.) Of all the evidence submitted to the Appeals Council, the administrative record contains only the deposition of Mr. Williams. Claimant's counsel however, asserts in her brief that the Court could obtain a copy of Dr. Bonfiglio's deposition either from the Appeals Council or she would provide a copy to the Court. (Document No. 15 at 6, n. 3.)

In his Reply, Claimant asserts that Dr. Bonfiglio requested a MRI, which revealed a "moderate degree of degenerative disc disease of L4-5 disk with bulging annulus with central disc nuclear protrusion and mild narrowing of neural foramina on both side at L4-5 level due to the bulging annulus and hypertrophic changes of the facet joints." (Id. at 6-7.) Based on the MRI and an examination, Dr. Bonfiglio concluded that Claimant has "ongoing back and lower limb pain,

17

especially on the right with examination findings of decreased back mobility, persistent back tenderness, lumbosacral paraspinal muscle spasticity, right lower limb motor weakness and reflex abnormality." (Id. at 7.) Noting the previous EMG that revealed denervation, Dr. Bonfiglio opined that Claimant had "disruption of normal function of this spinal segment with associated neurological compromise and chronic radiculopathies involving the S-1 nerve roots." (Id.)

On June 8, 2006, Dr. Bonfiglio reported that Claimant had further deterioration of the L4-5 disc with further protrusion and narrowing of the neural foramen on both sides, which explained his bilateral lower-limb radiating pain. (Id.) On January 11, 2007, Dr. Bonfiglio completed a form Physical RFC Assessment on which he opined that Claimant could lift ten pounds, frequently lift or carry less than ten pounds, stand or walk less than two hours out of an eight-hour workday, sit about six hours out of an eight-hour workday, and occasionally climb ramps or stairs, but never climb ladders/rope/scaffolds, balance, kneel, crouch, or crawl. (Id.) He further opined that Claimant should avoid concentrated exposure to extreme cold and heat, wetness, humidity, vibration, and hazards. (Id.) Dr. Bonfiglio was deposed on July 6, 2006, and testified that Claimant could not perform substantial, gainful activity. (Id.) Claimant alleges that the foregoing evidence requires remand for further consideration of Claimant's physical impairments. (Id. at 6-7.)

In deciding whether to grant review, the Appeals Council "must consider evidence submitted with the request for review . . . 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" Wilkins v. Secretary, 953 F.2d 93, 95-96 (4th Cir. 1991)(*en banc*)(citations omitted). Evidence is "new" if it is not duplicative or cumulative. See id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id.  The Regulations governing the circumstances under which the Appeals

Council is to review an ALJ decision shows that additional evidence will not be considered *unless* the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. §§ 404.1570(b); 404.970(b) (2006). "Pursuant to the regulations . . . , if additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's decision, the evidence is returned to the claimant, and the claimant is advised about her rights to file a new application." Adkins v. Barnhart, 2003 WL 21105103, *5 (S.D. W.Va. May 5, 2003).

The Appeals Council incorporated the deposition of Mr. Williams into the administrative record, but did not incorporate the deposition, treatment notes, and opinion of Dr. Bonfiglio, or the MRI results dated April 7, 2006. The Appeals Council determined that the information submitted to it was "new information . . . about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before July 26, 2005." (Tr. at 7.) The Appeals Council directed Claimant to file a further claim if he was disabled after July 26, 2005. (Id.)

The Appeals Council specifically incorporated the evidence from Mr. Williams into the administrative record. As a result, the Court must review the record as a whole, including the additional evidence, in order to determine if the Commissioner's decision is supported by substantial evidence. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991).

The Appeals Council considered Mr. Williams's report but found no basis for changing the ALJ's decision. The Court agrees and finds that Mr. Williams's deposition simply explains his assessment, which the ALJ properly accorded little weight. Regarding the MRI of April 7, 2006, and the evidence from Dr. Bonfiglio, the Court is not permitted to consider the evidence as it was not made a part of the administrative record and was not presented to the Court. See Wilkins, 953 F.2d at 95 ("'Reviewing courts are restricted to the administrative record in performing their limited

function of determining whether the Secretary's decision is supported by substantial evidence.'")(quoting <u>Huckabee v. Richardson</u>, 468 F.2d 1380, 1381 (4th Cir. 1972). Accordingly, the Court finds that remand is not required based on the additional evidence submitted to the Appeals Council.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 14.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 25, 2008.

R. Clarke VanDervort
United States Magistrate Judge